T.C. Memo. 2013-122

UNITED STATES TAX COURT

FRANK I. BOHANNON AND JULIE L. BOHANNON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15956-06.                         Filed May 7, 2013.

<u>Robert E. McKenzie</u>, <u>Kathleen M. Lach</u>, and <u>Adam S. Fayne</u>, for

petitioners.

<u>Timothy Shawn Sinnott</u>, <u>Timothy A. Lohrstorfer</u>, and <u>Brian M. Harrington</u>,

for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  The issues for decision are whether respondent issued a

notice of deficiency within the applicable limitations period, and if so, whether

[*2] petitioners are liable for deficiencies and fraud penalties relating to 1992, 1993, 1994, and 1995 (years in issue).

FINDINGS OF FACT

Mr. Bohannon, a jack-of-all-trades entrepreneur, owned and operated various businesses during the years in issue.  These businesses included:  two Schedule C companies; several subchapter S corporations; a partnership; and several sole proprietorships.  The companies, for which petitioners reported income and expenses on Schedules C, Profit or Loss From Business, provided tax return preparation services and sold and leased various items (e.g., cars and household items).

Petitioners owned approximately 35 acres of land, half of which was tillable, and entered into a sharecropping arrangement with a local farmer.  Pursuant to this arrangement, Mr. Bohannon purchased seeds and fertilizer and the farmer planted and harvested crops.[1]  Mr. Bohannon also attempted to raise catfish in a pond on petitioners' land.  In 1993, he hired Jones Fish Hatchery (Jones Fish) to consult on this venture.  Mr. Bohannon followed Jones Fish's

[1]Mr. Bohannon and the farmer were, pursuant to their arrangement, each responsible for half of the costs of their venture and entitled to half of the crops. Mr. Bohannon also prepared his land for planting, cleared brush, and applied fertilizer.

**[*3]** recommendations, dredged the pond, stocked the pond with several types of fish, and used an aerator to ensure sufficient oxygenation.

In the late 1980s, Mr. Bohannon began to suffer from ulcerative colitis, a chronic and incurable disease. To treat his disease, during the years in issue he took medications which adversely affected his acumen, attitude, and endurance. Mr. Bohannon decided to work from home and, as part of a larger home remodeling project, added a home office. Limited by his condition, Mr. Bohannon requested that Mrs. Bohannon assist with bookkeeping. Mrs. Bohannon was a nurse and had no bookkeeping or business experience. Nevertheless, she agreed to write checks and classify expenditures relating to his businesses. Petitioners meticulously retained receipts and recorded journal entries, but Mrs. Bohannon incorrectly classified numerous expenditures. For example, she classified expenditures relating to architectural services, cabinets, contractor services, and babysitting, respectively, as professional fees, supplies, repairs, and janitorial expenses. Mr. Bohannon believed that Mrs. Bohannon was correctly classifying expenditures and did not review her bookkeeping.

Although Mrs. Bohannon took responsibility for bookkeeping, Mr. Bohannon, a certified tax practitioner, maintained responsibility for petitioners' tax return preparation. He used the yearend numbers Mrs. Bohannon provided to

[*4] prepare his businesses' tax returns and petitioners' joint Forms 1040, U.S. Individual Income Tax Return.  Mrs. Bohannon's misclassifications caused petitioners to improperly claim numerous personal expenditures as business expenses.

In January 1996, respondent began auditing petitioners' 1992 and 1993 business and personal tax returns, and during the audit petitioners filed their 1994 and 1995 tax returns.  Revenue Agent Dean Crawford (RA Crawford) interviewed Mr. Bohannon several times but did not interview Mrs. Bohannon.  In May 1996, RA Crawford and Revenue Agent Dan O'Sullivan (RA O'Sullivan) visited petitioners' home to investigate their farming activities.  During the visit Mr. Bohannon informed the agents about his sharecropping arrangement and his catfish farming activities.  The revenue agents did not examine the catfish pond, and the sharecropper had not yet planted crops.

In October 1996, respondent assigned Special Agent Steve Perron (Agent Perron) and Revenue Agent Karen Sheely (RA Sheely) to investigate whether petitioners had engaged in criminal tax evasion.  As part of the investigation Agent Perron reviewed bank records, including draft documents relating to the years in issue that Mr. Bohannon had submitted to obtain lines of credit.  These documents reflected more income than was reported to respondent on petitioners'

[*5] tax returns relating to those years. Petitioners also submitted receipts of their expenditures to RA Sheely, who determined that many items were incorrectly reported on petitioners' tax returns and performed a source and application of funds analysis to reconstruct petitioners' income.

On May 18, 2006, respondent sent petitioners a notice of deficiency. Respondent determined that petitioners had understated taxable income by $0, $22,500, $171,713, and $157,963 relating to 1992, 1993, 1994, and 1995, respectively. Respondent further determined that petitioners had deficiencies of $37,268, $45,436, $88,116, and $130,577 relating to 1992, 1993, 1994, and 1995, respectively. In addition, respondent determined that petitioners were liable for section 6663 fraud penalties.[2] On August 16, 2006, petitioners, while residing in Indiana, filed their petition with the Court. Trial in this case commenced September 10, 2012. On October 11, 2012, the Court filed the parties' stipulation of settled issues, which provided that petitioners are entitled to additional deductions and credits (i.e., which petitioners had failed to claim on tax returns) and that "[r]espondent agrees that petitioners' understatements of income for the

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*6] taxable years 1992, 1993, 1994, and 1995 are no more than $9,008.00, $23,862.00, $25,820.00, and $3,263.00, respectively."

OPINION

Section 6501(a) provides that, generally, the amount of any tax must be assessed within three years of the filing of a return. Respondent contends that, pursuant to section 6501(c)(1), the period to assess petitioners' tax liabilities relating to the years in issue remains open because petitioners filed false or fraudulent returns with the intent to evade tax. Fraudulent intent may be inferred from "badges of fraud" including a taxpayer's maintaining inadequate records, failure to cooperate with tax authorities, intent to mislead, and dealing in cash. See Gould v. Commissioner, 139 T.C. ___, ___ (slip op. at 49) (Nov. 26, 2012); Petzoldt v. Commissioner, 92 T.C. 661, 700-702 (1989). Respondent must, but has failed to, establish by clear and convincing evidence that petitioners intended to evade tax. See sec. 7454(a); Rule 142(b); Pittman v. Commissioner, 100 F.3d 1308, 1313 (7th Cir. 1996), aff'g T.C. Memo. 1995-243; Petzoldt v. Commissioner, 92 T.C. at 699.

Respondent's primary contention is that Mr. Bohannon, a certified tax practitioner, reduced petitioners' tax liabilities by deliberately classifying personal expenditures as business expenses. Mr. Bohannon, however, credibly testified that

**[\*7]** he did not pay close attention to how these expenditures were classified. When preparing tax returns relating to the years in issue, he trusted and relied on Mrs. Bohannon's classifications. While Mr. Bohannon's reliance on Mrs. Bohannon (i.e., to properly classify expenditures) may have been imprudent, it was not, as respondent contends, "willful blindness". Any underpayments were directly attributable to Mrs. Bohannon's failure to properly classify expenses, not to Mr. or Mrs. Bohannon's intent to evade tax. See Petzoldt v. Commissioner, 92 T.C. at 700 (stating that the existence of fraud may not be found under "'circumstances which at most create only suspicion'" (quoting Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950), remanding a Memorandum Opinion of this Court)).

Respondent further contends, but has failed to establish, that petitioners were not conducting crop and catfish farming activities during the years in issue. In addition, respondent contends that petitioners' intent to evade tax is "demonstrated by petitioners claiming numerous personal expenses as business expenses * * * after the audit began." We are not convinced that petitioners were aware of the misclassifications at the time they filed their 1994 and 1995 tax returns. Indeed, petitioners were fully cooperative during the audit process and provided respondent with additional documentation which ultimately resulted in respondent's reducing

**[\*8]** the alleged cumulative understatement of income, relating to the years in issue, from $352,176 to $61,953.  See Gould v. Commissioner, 139 T.C. at ___ (slip op. at 49).

Petitioners maintained meticulous records, rarely used cash, and did not conduct their businesses in a manner designed to conceal income.  See id.; cf. Petzoldt v. Commissioner, 92 T.C. at 700-702 (stating that "failure to maintain or present records to respondent's agents" and "dealing in cash" were evidence of fraudulent intent).  Simply put, petitioners made mistakes recording their expenditures, did not intend to evade tax, and are not liable for fraud penalties pursuant to section 6663.  See secs. 6663(a), 7454(a); Rule 142(b); Pittman v. Commissioner, 100 F.3d at 1313; Petzoldt v. Commissioner, 92 T.C. at 699.

Accordingly, the extended limitations period set forth in section 6501(c)(1) is not applicable, and respondent's determinations and adjustments relating to 1992, 1993, 1994, and 1995 are barred.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

Decision will be entered

for petitioners.